DAUGHERTY *v.* GENERAL AMERICAN LIFE INSURANCE CO.

4-3655

Opinion delivered February 4, 1935.

*M. F. Elms,* for appellant.

246

*Allen May, Ingram & Moher* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

JOHNSON, C. J. On April 10, 1918, the Missouri State Life Insurance Company issued to one John W. Daugherty, insured, and Willa Daugherty, as beneficiary, a policy of insurance whereby the insurance company agreed to pay to the named beneficiary in the event of the death of the insured the sum of $2,000, subject to the annual payment of premiums and other conditions therein specified.

Subsequent to the issuance of insurance by the Missouri State Life Insurance Company, namely, in 1933 the appellee, General American Life Insurance Company, by purchase agreement assumed and agreed to pay the outstanding liabilities and obligations of the Missouri State Life Insurance Company, but no contention is here urged in reference to the purchase.

The insured paid ten annual premiums on this contract of insurance, and in the meantime borrowed from the insurance company the sum of $339.04 which includes accrued interest. No additional premium was ever paid by the insured. On October 9, 1933, the insured died, and subsequently this suit was brought by the named beneficiary against appellee seeking judgment for the face of the policy less the admitted loan.

The appellant or beneficiary predicates her right of recovery upon the following provisions of the contract.

"Grace in Premium Payments

"If any premium after the first is not paid on the date when due, this policy will continue in full force from said due date for the term of thirty-one days, which is the period of grace allowed hereunder, without interest charge, in the payment of any such premium.

"After completion of premium payments for the first two policy years, if any subsequent premium is not paid on the date when due, and remains unpaid during the period of grace, the insured shall, during said period, have the following

"Options

"1.   To surrender this policy at the home office of the company for its cash value; or,

"2.   To surrender this policy at the home office of the company for a profit-sharing paid-up life policy; or,

"3.   To let the insurance for the face amount hereof, plus amount of existing paid-up insurance additions, continue as nonprofit-sharing term insurance, reckoned from the due date of the unpaid premium. If the insured shall not, within the period of grace, surrender this policy at the home office of the company for its cash value as provided in option 1, or for a paid-up life policy as provided in option 2, the insurance will be automatically continued as provided in option 3.

"Table of Nonforfeiture Values

"The surrender values shown in the following table represent the values available if premiums have been paid in full for the number of years stated in the table and if there is no indebtedness hereon to the company.

"If, after the second policy year, a semi-annual or one or more quarterly premiums are paid in addition to the premiums for complete policy years, the proportionate part of the current year's increase in the values will be added to the values of the preceding year.

| At the Completion of Policy Year the | Cash Value | Paid-up Life Policy | Term of Continued Insurance Years | Months |
|---|---|---|---|---|
| 1st | * | * | 31 days | |
| 2nd | 36 | 74 | 1 | 9 |
| 3rd | 74 | 146 | 3 | 5 |
| 4th | 112 | 218 | 5 | 0 |
| 5th | 152 | 290 | 6 | 5 |
| 6th | 192 | 360 | 7 | 8 |
| 7th | 234 | 428 | 8 | 8 |
| 8th | 276 | 494 | 9 | 7 |
| 9th | 318 | 560 | 10 | 4 |
| 10th | 360 | 624 | 10 | 11 |

Values will increase annually thereafter, will be furnished on application to the home office and will be equal to the entire reserve for the sum insured."

The insured did not pay his annual premium for the year 1928, and did not exercise his right of options 1 or 2, and thereupon the insurer automatically converted the policy as provided in option 3, and the insurer's construction of this option is the issue here presented for determination.

In virtue of the options heretofore quoted and the following provision of the policy:

"General Provisions. This policy is payable at the home office of the company in St. Louis, Missouri, and proof of interest of claimant will be required. Any indebtedness hereon to the company will be deducted in any settlement of this policy or from any cash surrender value available hereunder; the amount of paid-up life insurance and the period of continued term insurance, provided in options 2 and 3 of the nonforfeiture values, will be reduced by the equivalent value of such indebtedness according to the American Experience Table of Mortality and three per cent. interest. In the settlement of this policy as a death claim, any unpaid premiums or unpaid part of a premium for the current policy year in which death occurs shall be considered as an indebtedness hereon to the company."

The insurer upon failure of the insured to pay his eleventh premium charged his loan of $339.04 against the cash surrender value of the policy which was $360 and continued the policy in force for its face value of $2,000 as term insurance for the length of time only that the difference between the cash surrender value, after the deduction of the loan, would purchase, which was nine months.

The trial court construed the contract as the insurer, had, and therefore directed a verdict in favor of the insurer, and this appeal is therefrom.

Appellant's primary contention is that, under the terms of the policy heretofore quoted, the loan of $339.04 should be charged against the face of the policy, and not against the cash surrender value thereof, and that, when thus construed, the policy, when converted into term insurance, ran as such ten years and eleven months from

the date of conversion, thereby making the policy in full force and effect when the insured died.

When the clauses of the contract above quoted are read together, and are given their usual and ordinary meaning and interpretation, it is that the loan is deductible from the cash loan value of the policy at the time of conversion, and the balance remaining, if any, of the cash surrender value shall be used in purchasing extended term insurance.

This is the unambiguous effect of the terms of the contract as employed by the parties, and we must apply the law to such terms without construction. *Gooch* v. *Metropolitan Life Ins. Co.*, (Mo. App.) 49 S. W. (2d) 679, and cases there cited.

Appellant cites and relies upon *Stark* v. *John Hancock Life Ins. Co.*, 176 Mo. App. 574, 159 S. W. 758, and a number of other cases as supporting her contention, but, after careful consideration of this and all other cases cited, it may be said that none of them contain a contract of insurance in tenor and effect of the one here under consideration. The language of the contract here is clear and concise, and but one interpretation can be given the language employed by the parties, and under such circumstances the terms employed by the parties must be given their usual and ordinary meaning.

Next, appellant urges that on the date of the conversion of the policy of insurance by the insurer the insured had $69.91 in dividends in the hands of the insurer, and that this sum should have been employed in paying his annual premium or in purchasing extended insurance. On this contention the policy provides:

"Dividend Options

"1. Draw the dividend in cash; or,

"2. Apply the dividend in reduction of premium; or,

"3. Apply the dividend to the purchase of a profit-sharing paid-up insurance addition, increasing the insurance hereunder; or,

"4. Leave the dividend on deposit with the company to accumulate at interest, the entire accumulation.

or any part thereof, to be payable in cash to the insured at any time, on demand.

"Any dividend not drawn or applied as per option 1, 2 or 3 above, within one month from the date when credited, shall become an interest-bearing deposit as per option 4.

"Dividend Deposits. Dividend deposits may remain with the company at interest while this policy remains in force, becoming payable in cash in any event upon the discontinuance of this policy to the beneficiary if this policy matures as a death claim; otherwise to the insured. Provided, that no premium shall be construed as paid either wholly or in part, nor any insurance hereunder extended or continued in force by reason of any dividend deposits remaining with the company."

It will be noted that the policy by express terms provides the disposition of dividend payments. The testimony reflects that the insurer sent to the insured on the date of the conversion of the contract a check for the sum of $69.91, which was the accrued cash dividend upon this policy to that date, and we think this was a substantial compliance with the terms of the policy.

Moreover the uncontradicted testimony reflects that, had the insurer utilized the dividend of $69.91 in purchasing extended term insurance, instead of sending a check therefor to the insured, as was done, the result would have been the same because the aggregate value of the policy plus the dividend would have purchased extended term insurance for a period of three years, 213 days only, which term would have expired long prior to the insured's death.

Our conclusion is that the trial court correctly construed the provisions of the policy, and was therefore warranted in directing a verdict in favor of the insurer.

Judgment affirmed.