Gilbert HART and Mary HART *v.*
MFA INSURANCE COMPANY

CA 79-11                                    597 S.W. 2d 105

Court of Appeals of Arkansas
Opinion delivered March 19, 1980
Released for publication April 23, 1980

*Ponder & Jarboe,* for appellants.

*Barrett, Wheatley, Smith & Deacon,* by: *Stephen M. Reasoner,* for appellee.

M. STEELE HAYS, Judge. This case presents a question of insurance coverage in connection with a fire loss. On July 11, 1975 MFA Insurance Co. issued a policy of fire insurance covering the home and contents of Gilbert and Mary Hart. The policy provided coverage of $8,000.00 on the dwelling and $4,000.00 on the contents for a period of three years. The total premium was $300.00 and was payable in semi-annual installments of $50.00 each. One installment, apparently the fifth, became due on July 11, 1977, and a premium statement was mailed to the Harts by MFA approximately twenty days earlier and received by them ten days prior to July 11. On the reverse side of the notice the following sentence was printed:

### 1. FIRE, HOMEOWNERS AND INLAND MARINE POLICIES UNDER DPP PLAN

> "If the premium due is an installment under Deferred Premium Payment Plan, and payment is not received by due date, notice is hereby given that such policy is cancelled on due date."

The premium was not paid on or before the due date and six days thereafter, on July 17, the Hart dwelling and contents were heavily damaged by fire. The damage to the dwelling was stipulated to be $7,606.29 and to the contents, $4,000.00. MFA refused the claim, contending that the policy lapsed on July 11, for non-payment of the premium due on that date. The Harts contend, rather, that under the terms of the policy they were entitled to ten days notice of cancellation and, therefore, the insurance was still in force. The cause was

submitted to the trial court sitting as a jury and judgment was rendered for the company.

The Harts argue three points for reversal: that the trial court erred in ruling that MFA was not required to give ten days notice of cancellation after the Harts failed to pay the premium; that the Court erred in ruling that the cancellation notice was conspicuous; and that the Court erred in ruling that the notice of cancellation was not a conditional notice.

We need not consider whether the notice in the premium statement was sufficiently conspicuous or whether it was unconditional, as we find the clear import of the language in the policy gave the Harts the right to assume that a notice of cancellation for failure to pay the premium when due was required. Indeed, that is precisely what the policy states. The appropriate section reads as follows:

1. CANCELLATION FOR NON PAYMENT OF PREMIUM.

"This policy may be cancelled by this company at any time during the policy period for *failure to pay any premium when due* whether such premium is payable directly or indirectly under any premium finance plan or extension of credit *by mailing or delivering to the insured written notice stating when not less than ten days thereafter such cancellation shall be effective.*" (emphasis supplied)

MFA argues that the notice by cancellation need not wait until the premium is past due and unpaid, but may be sent at any time during *the policy period.* Thus, appellee argues the notice sent out approximately twenty days before July 11 notifying the Harts that the premium was due operated as the cancellation notice in the event the insured failed to send in the premium by the due date. But we cannot arrive at the same interpretation MFA does of this provision, because if we gave literal effect to the language, as MFA urges us to do, it would mean that the company could issue a policy under a deferred payment plan, as here, and immediately send out a notice that if any subsequent installment of premium was not

paid on the due date the insurance would be cancelled on the date the premium was due. Of course, there is nothing improper about such a procedure provided it does not circumvent a provision in the policy which gives the policy holder the right to assume that he will receive a notice of cancellation after he has failed to pay one of the premiums on the due date. That is exactly what we believe occurred in the instant case. The Harts believed, and so testified, that if the July 11 premium was not paid promptly then the policy was not automatically cancelled on the 11th, but was *subject* to cancellation if the company so elected. We think that assumption was not inconsistent with the clear inference of the provision.

While we are required under settled law to give a reasonable interpretation to the clear meaning of words used in a policy, we are not required to do so when such interpretation leads to an improbable end, as would the literal interpretation urged by MFA.

Appellee's interpretation is founded on the words "at any time during the policy period", and if these words were eliminated from the sentence, it is clear that MFA's interpretation would not be possible, as the pertinent provision would then read:

> This policy may be cancelled by this company . . . for failure to pay any premium when due . . . by mailing . . . to the insured written notice stating when not less than 10 days thereafter such cancellation should be effective.

Thus, appellee interprets the words "at any time during the policy period" as relating to *notice,* that is to say that the words are intended to relate to or modify, when *notice* may be sent out, i.e., at any time during the policy period. As we have said, if this were so, then the company in 1975 (or *at any time*) could send a notice that if the premium due on December 11, 1978, nearly three years later, were not paid on the due date, the policy was immediately cancelled. We are unwilling to reach so contrived a conclusion. What we do conclude seems far more plausible and that is that the words "at any time

during the policy period" are intended to differentiate between cancellation because of failure to pay premiums and cancellation *upon other grounds.* When the section of the policy in which the above quoted provision appears is examined in full (it is too lengthy to be set out herein), it readily appears that there are 3, perhaps 4, separate conditions under which the company reserves the right to cancel, which vary depending on the grounds for cancellation and on the length of time the policy has been in force. Thus, under paragraph 2, if the policy has been in force for 60 days or more, the company reserves the right of cancellation for the reasons listed therein, by giving thirty days notice. Similarly, paragraph 3 deals with cancellation procedures in cases where the policy is for a term of more than one year. Thus, the *right* of cancellation and the *method* of cancellation vary depending upon the ground on which cancellation is based and whether the policy has been force a certain period of time. The *right* of cancellation which is derived from failure to pay any premium installment is reserved to the company *at any time during the policy period* and we think it clear that it was to distinguish between cancellation for failure to pay premiums and cancellation for other reasons, that the words "at any time during the policy period" appear. The words, we hold, are intended to modify *cancellation* and not *notice.*

Appellee relies upon cases cited in Appleman, *Law of Insurance,* § 4185, Vol. 6-A, p. 543, for the following statement of the law with respect to notice:

> "A notice stating that if a premium was not paid by a certain time, the policy would stand cancelled without further notice, was deemed to be a proper notice and not a mere expression of an intention to cancel at a future date."

We have no quarrel with the quoted section as representing the law, generally, in this area, but the notice referred to, at least in the context of cases footnoted, *Russell v. Starr,* 65 N.M. 49, 239 P. 2d 735 (1952); *Johnson v. Nationwide Mutual Insurance Company,* 276 F. 2d 574 (1960); *Lievers v. National Insurance Underwriters,* 257 Minn. 268, 101 N.W. 2d 817 (1960) and *Ralston v. Royal Insurance Company,* 79 Wash. 557, 140 P. 552 (1914), are not in point, as they deal with different factual situations and therefore are not controlling of the issue

before us. So far as we can determine from the opinions in the cases cited, in every instance the notice of cancellation was sent out *after* the premium was due and unpaid, rather than before. This distinction is telling.

In *Russell,* the language of the policy provision is not revealed (the court noted that "the policies are not before us") and the issue was whether a cancellation notice which purported to *shorten* the amount of notice stated in the policy was void altogether, or simply operated to conform to the policy. In other words, *Russell* holds that where the policy provided for five days notice, and the notice given provided only *four* days, the insured actually has the full five days before coverage lapses. That, of course, is not the issue before us. In the *Johnson* case, the premium was due on August 10 and on July 20 the insurer sent a premium statement. Payment was not received and on August 15, a cancellation notice was sent by registered mail informing the insured that at 12:01 A.M. 17 days thereafter his coverage would be cancelled. As in *Russell,* the notice was sent *after* the premium due date.

Similarly, in *Ralston* and *Lievers,* the disputed notice of cancellation was sent *after* the failure to pay the premium, so these cases are not authority for the issue before us.

Appellant relies on *Priest* v. *Banker's Life Association,* 161 Pac. 631, which appellee argues is not persuasive because it turns on the interpretation of a Kansas statute. Whether the *Priest* opinion is distinguishable because a statutory requirement of notice was involved need not be examined in depth, for the case at least has some application and the rationale behind the decision is pertinent to the case at bar. The statute required notice by fraternal benefit insurance companies of cancellation for non-payment of any premium "due and unpaid". The premium was not due until July 1 and a notice was sent to the insured on June 23 which, the company contended, constituted notice of cancellation. The argument was rejected and the court used reasoning not inappropriate to the issue before us:

". . . the notice required is not notice of a contingent intention to forfeit which may possibly be entertained in the future. It is notice of an actual intention to forfeit because premium has not been paid. Such an intention cannot exist until cause for forfeiture arises. Causes for forteiture cannot arise during the time within which payment may rightfully be made. *That time must expire and the premium be unpaid.*"

It makes no great difference that the provision is statutory on the one hand (the *Priest* case), and contractual on the other, *Hart* v. *MFA,* the logic is interchangeable.

Appellee next urges that this interpretation of the policy would result in the "strange situation" that an insurance company would always have to give an insured at least ten days free insurance. Whether that result is strange need not be debated, because it is enough to say that if ten days of free insurance does result, as it well could, it is because the policy is so drafted — and drafted by the company. There is no rule of statute or regulation of which we are aware that requires the insurer to include such a provision as here presented. The company chose to include the provision and we are persuaded that the customary and ordinary usages of the words in this provision reasonably *conveys* to the policy holder that if he fails to pay an installment of his premium the company *may* (not *shall*) elect to cancel the policy by giving him ten days notice. We emphasize the word "may" used in the policy because we believe it further reinforces the impression by the policy holder that a failure to pay the premium on or before the due date does not *automatically* result in cancellation, but merely gives rise to the possibility. The word "shall" would have been a much clearer message to the policy holder.

It is a cardinal rule of insurance law that words used in the policy are to be taken and understood in their plain, ordinary and usual sense. 44 CJS § 294. The rule has been stated and restated many times in *Arkansas State Farm Mutual Insurance Co.* v. *Belshe,* 195 Ark. 460. *Daugherty* v. *General American Life Insurance Co.,* 190 Ark. 245.

Furthermore it is to be construed liberally in favor of the

insured. *National Life & Accident Insurance Co.* v. *Whitfield,* 186 Ark. 198, and any doubts resolved in favor of the insured. *Southern Surety Co.* v. *Penzel,* 164 Ark. 365. *State Farm Mutual Insurance Co.* v. *Baker,* 239 Ark. 298.

Moreover, under the equally settled view that cancellation provisions must be strictly complied with (*Merrimack Mutual Fire Insurance Co.* v. *Scott,* 219 Ark. 159), we find that the policy as drafted required that the company, if it elected to cancel for failure by the Harts to pay the July 11, 1977, installment, was obligated to notify in accordance with the language expressed.

Reversed and remanded with instructions to enter judgment consistent with this opinion, including penalty and a reasonable attorney's fee pursuant to statute. In view of the brevity of the record a fee of $750.00 is awarded for the services of appellants' attorney in this court.