439 S.E.2d 418

Janet CONN; Beth McDaniel; James C. McDaniel; Joshua McDaniel, Infant, and Jason McDaniel, Infant, Through Their Next Friend, Beth McDaniel, Plaintiffs Below, Appellees,

v.

MOTORIST MUTUAL INSURANCE COMPANY, Defendant Below, Appellant.

No. 21584.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1993.

Decided Nov. 23, 1993.

James H. Young, Jr., Flesher & Young, Michael A. Woelfel, Huntington, for plaintiffs.

Charles F. Bagley, III, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for defendant.

MILLER, Justice:

The appellant and defendant below, Motorist Mutual Insurance Company (Motorist Mutual) appeals a final order of the Circuit Court of Wayne County, entered March 23, 1992. In a declaratory judgment action to determine whether Motorist Mutual had coverage under its automobile liability insurance policy, the circuit court concluded that Motorist Mutual's automobile liability insurance policy was in effect on February 5, 1989, the

date of the accident. Motorist Mutual contends that the circuit court erred in not finding that the policy was validly canceled before the date of the accident.

I.

The automobile liability insurance policy in question was issued to Arcie Conn through the Hensley Insurance Agency in Huntington, West Virginia, on September 19, 1988. The policy period was for six months, making the expiration date March 19, 1989. The insured, Mr. Conn, paid one half of the premium when he purchased the policy, with the other half to be billed to him. The policy provided for single limits of $50,000 for liability coverage. The plaintiffs were passengers in Mr. Conn's vehicle and were injured when he negligently drove his car off the highway. Mr. Conn was killed in the accident. Motorist Mutual denied coverage under its policy.

The facts surrounding the cancellation claim are as follows. On November 29, 1988, Motorist Mutual mailed an installment billing notice to Mr. Conn. It showed a balance of $171.90 due by December 18, 1988, to keep the policy in effect until March 19, 1989. It also contained language advising Mr. Conn that if payment was not received by the due date, the policy would be cancelled as of January 3, 1989. Mr. Conn's wife denied receiving the billing notice. However, a copy of the billing notice was sent to and received by the Hensley Insurance Agency.

Subsequently, when no payment was made on the installment billing notice, Motorist Mutual on December 27, 1988, mailed to Mr. Conn what it termed a "cancellation reminder notice." The notice advised that if the premium payment was not made by January 3, 1989, the liability policy would be cancelled. Again, Mr. Conn's widow claimed that the notice was never received. The Hensley Insurance Agency did receive a copy of the notice.

Motorist Mutual provided the circuit court with a deposition of Ruby Bailey, its data control supervisor, who explained the process for mailing notices such as the ones involved in this case. Ms. Bailey stated that she had conducted what is termed as an "audit trail log" since Motorist Mutual does not keep a copy of the actual notices sent out. According to Ms. Bailey, the information for sending a notice is generated by a computer on a daily basis and thereafter is stored on microfiche. The microfiche revealed Mr. Conn's policy number, the due date of the premium as December 18, 1988, and the date run as November 28, 1988. The notices are printed in a continuous form by the computer. They are separated into their individual components by another machine. The machine then checks the number of notices that were individually separated against the computer log which identifies the number printed by the computer. The notices are not manually counted, but are consecutively numbered. This information is logged on a mail control form.[1]

In addition to this evidence, Motorist Mutual submitted deposition testimony from Jim Hensley of the Hensley Insurance Agency who testified that he received copies of both notices. The plaintiffs introduced the deposition testimony of R.D. Street, a credit representative of General Motors Acceptance Corporation (GMAC), which held a first lien on Mr. Conn's car. Mr. Street testified that no notices of cancellation were received by GMAC.

II.

The circuit court apparently relied on the Syllabus of *Smith v. Municipal Mutual Insurance Co.*, 169 W.Va. 296, 289 S.E.2d 669 (1982), to conclude that actual written notice was required to be shown by Motorist Mutual:

"In order for a farmers' mutual fire insurance company to cancel a policy under *W.Va.Code*, 33–22–14 [1957] and *W.Va. Code*, 33–22–15 [1957], that company must provide actual written notice to the policyholder in question at least five days before the cancellation is to become effective."

Motorist Mutual argues that *Smith* is distinguishable because it dealt with the cancel-

1. The mail control form for November 28, 1988, showed a total of 2,644 notices were processed with a notation that they were mailed November 29, 1988.

lation of a farmers' mutual fire insurance policy which involved different statutes [2] than those contained in our statute relating to cancellation of an automobile liability insurance policy contained in W.Va.Code, 33–6A–1. For purposes of this case, we agree that *Smith* is not controlling.

■ When we turn to W.Va.Code, 33–6A–1 (1967),[3] it is clear that this section does not deal with the mechanics of a notice of cancellation of an automobile liability insurance policy. This section provides certain specific grounds for cancellation "after the policy has been in effect sixty days, or in case of renewal effective immediately[.]" Although W.Va. Code, 33–6A–1, does not describe the procedure for cancellation, there are procedural requirements contained in W.Va.Code, 33–6A–3 (1967). That statute states that if an automobile liability insurance policy has been in effect sixty days or if renewed, the "insurer or its duly authorized agent shall, in the notice of cancellation ... specify the reason or reasons relied upon by such insurer for such cancellation."[4] There is no dispute that the policy in this case was in effect for more than sixty days. The cancellation provisions of the Motorist Mutual policy state as to the time in which a notice of cancellation is to be sent: "Notice must be received at least 10 days prior to the date cancellation is to take effect[.]"[5]

Although the parties focus on whether the foregoing language creates a mandatory requirement that the cancellation notice be actually "received" by the insured, we find this case can be disposed of on a more narrow basis.

■ When we examine the November 29, 1988, billing copy which was sent to the Hensley Insurance Agency, we do not believe it comports with the requirements of W.Va. Code, 33–6A–3, as a notice of cancellation. It does not state that the policy is cancelled

**2.** In *Smith*, the following sections of the farmers' mutual fire insurance statute were cited:

"*W.Va.Code*, 33–22–14 [1957] states:

" 'All notices of cancellation of policies or reduction thereof and all other notices to members required by this article shall be delivered personally or mailed in a sealed envelope addressed to the last known address of the member and when so given they shall be deemed sufficient and binding upon the member so notified.'

" ... *W.Va.Code*, 33–22–15 [1957] ... states in pertinent part as follows: '(c) [t]he company may cancel any policy upon at least five days' written notice to the holder.' " 169 W.Va. at 298, 289 S.E.2d at 670.

**3.** W.Va.Code, 33–6A–1, as it relates to cancellation for nonpayment of premiums, states:

"No insurer once having issued or delivered a policy providing automobile liability insurance in this State insuring a private passenger automobile shall, after the policy has been in effect for sixty days, or in case of renewal effective immediately, issue or cause to issue a notice of cancellation during the term of the policy except for one or more of the following specified reasons:

"(a) The named insured fails to discharge when due any of his obligations in connection with the payment of premium for such policy or any installment thereof[.]"

**4.** The complete text of W.Va.Code, 33–6A–3, is:

"In every instance in which a policy or contract of automobile liability insurance which has been in effect sixty days or which has been renewed is cancelled by the insurer, such insurer or its duly authorized agent shall, in the notice of cancellation or at the written request of the named insured, specify the reason or reasons relied upon by such insurer for such cancellation. Such reasons shall be stated in a written notice and shall, if not provided in the notice of cancellation, be made within thirty days after such request: Provided, however, That there shall be no liability on the part of, and *no cause of action shall arise against,* any insurer or its agents or its authorized investigative sources for any statements made with probable cause by such insurer, agent or investigative source in such written notice required to be given pursuant to this section."

**5.** The applicable policy provisions regarding cancellation are:

"**A. Cancellation.** This policy may be cancelled during the policy period as follows:

\* \* \*

"2. If we decide to cancel this policy we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice must be received:
a. at least 10 days prior to the date cancellation is to take effect if cancellation is for nonpayment of premium for the initial issuance of a policy; or
b. at least 30 days prior to the date cancellation is to take effect in all other cases.

\* \* \*

"**D. Other Termination Provisions.**
"1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice."

for failure to pay the premium as required under W.Va.Code, 33–6A–3. It implies that upon the happening of a future event, that being the insured's failure to pay the premium by December 18, 1988, the policy will be cancelled on January 3, 1989.[6]

More importantly, the next document sent by Motorist Mutual, which was mailed on December 29, 1988, indicated that the insured still had an opportunity to pay the premium.[7] This notice serves to negate the fact that the original document could be reasonably understood to be a cancellation notice. We spoke to the general requisites of an insurance cancellation notice in the Syllabus of *Staley v. Municipal Mutual Insurance Co. of West Virginia*, 168 W.Va. 84, 282 S.E.2d 56 (1981):

"A notice of cancellation of insurance must be clear, definite and certain. While

**6.** The relevant portion of the billing notice is:

"PLEASE PAY:

| | AMOUNT DUE | BY THIS DATE: | DATE DUE |
|---|---|---|---|
| | 173.90 | | 12/18/88 |

POLICY NUMBER
3887–04–309895–00D
Show Address Change On Back
ARCIE M CONN
P O BOX 508
KENOVA WV 25530

AGENT COPY
DIRECTALK AUTO INSTALLMENT

Amount
Enclosed $_____

CANCELLATION DATE 01/03/89
THE AMOUNT SHOWN ABOVE MUST BE PAID BY THE "DATE DUE". IF NO PAYMENT IS RECEIVED BY THE DATE DUE, YOUR INSURANCE COVERAGE WILL BE CANCELLED BY THE COMPANY AS OF 12:01 A.M., S.T. ON THE "CANCELLATION DATE" INDICATED ABOVE.
388704309895000017390000000121888

00037

11/29/88

DIRECTALK AUTO INSTALLMENT BILLING NOTICE

| INSURED/AUTO IDENTIFICATION | ATTENTION AGENT |
|---|---|
| ARCIE M CONN<br>P O BOX 508<br>KENOVA WV 25530 | IF NO PAYMENT IS RECEIVED BY THE "CANCELLATION DATE" SHOWN ABOVE, THE POLICY WILL BE CANCELLED. |
| AUTOS:<br>1.   85 CHEV (801110)<br>2.<br>3. | *            *            * |

| TRANSACTION DESCRIPTION | AMOUNT |
|---|---|
| PREMIUM FOR POLICY PERIOD | 345.90 |
| AMOUNT PAID TO DATE | 174.00CR |
| BALANCE DUE | 171.90 |
| INSTALLMENT CHARGE | 2.00 |

CR=CREDIT"

*            *            *"

**7.** The relevant text of this notice states:
"THIS IS A REMINDER NOTICE TO ADVISE YOU THAT WE HAVE NOT YET RECEIVED YOUR PREMIUM PAYMENT FOR THE ABOVE NUMBERED POLICY.
"IN ORDER TO MAINTAIN UNINTERRUPTED INSURANCE PROTECTION, YOUR PAYMENT MUST BE RECEIVED ON OR BEFORE THE CANCELLATION DATE. OUR RECORDS SHOW THAT YOUR CANCELLATION DATE IS 01/03/89.
"OUR RECORDS INDICATE THE VEHICLE(S) INSURED BY THIS POLICY ARE:

VEH 1: 85 CHEV
VEH 2:
VEH 3:
"YOU MAY PAY EITHER THE TOTAL DUE (OR THE MINIMUM DUE IF ONE IS SHOWN). THE MINIMUM DUE AMOUNT INCLUDES A $2.00 INSTALLMENT CHARGE, AND YOU WILL BE BILLED AT A LATER DATE FOR THE REMAINING PREMIUM.
"THANK YOU FOR CONTINUING YOUR INSURANCE PROTECTION WITH US."

it is not necessary that the notice be in any particular form, it must contain such a clear expression of intent to cancel the policy that the intent to cancel would be apparent to the ordinary person. All ambiguities in the notice will be resolved in favor of the insured."

Although *Staley* involved the cancellation of a fire insurance policy, its principle with regard to the sufficiency of the notice is applicable to other types of insurance policies. *See Keller v. First Nat'l Bank,* 184 W.Va. 681, 403 S.E.2d 424 (1991) (credit life insurance). *See generally* 14A J. Appleman & J. Appleman, *Insurance Law & Practice* § 8181 (1985).

Several jurisdictions have dealt with the question of the sufficiency of a purported cancellation notice which also informs the insured that if premiums are promptly paid, coverage will continue. In *Automobile Club Insurance Co. v. Donovan,* 550 A.2d 622, 623 (R.I.1988), the Supreme Court of Rhode Island began by noting:

"It is well settled in Rhode Island that the purpose of providing notice of cancellation of an insurance policy is to make the insured aware that the policy is being terminated and to afford the insured the time to obtain other insurance prior to termination of the existing policy." (Citations omitted).

In *Donovan,* the insured initially received a billing notice which stated "that March 24, 1983, was both the 'due date' and the 'expiration date[.]' " 550 A.2d at 622–23. The court held that the notice was insufficient, stating this general rule: "Several courts have held that when an insurance company requests an additional premium and states that prompt payment will keep the policy in effect, this is an insufficient notice of cancellation since it is ambiguous and not sufficiently unequivocal." (Citations omitted).

The Arkansas court in *Hart v. MFA Insurance Co.,* 268 Ark. 857, 597 S.W.2d 105

(1980), dealt with a notice of cancellation that was included in a premium billing statement and contained language similar to that in the November 29, 1988, statement in this case.[8] The Arkansas court found the notice to be too contingent after adopting this language from *Priest v. Bankers' Life Association,* 99 Kan. 295, 301, 161 P. 631, 633–34 (1916):

" '... the notice required is not notice of a contingent intention to forfeit which may possibly be entertained in the future. It is notice of an actual intention to forfeit because premium has not been paid. Such an intention cannot exist until cause for forfeiture arises. Causes for forfeiture cannot arise during the time within which payment may rightfully be made. *That time must expire and the premium be unpaid.*' " 268 Ark. at 863, 597 S.W.2d at 108. (Emphasis in original).

The Arkansas court also pointed out that the insurance policy provided for cancellation "at any time during the policy period for *failure* to pay any premium when due ... by mailing or delivering to the insured written notice stating when not less than ten days thereafter such cancellation shall be effective." 268 Ark. at 859, 597 S.W.2d at 106–07. (Some emphasis omitted). The insurance carrier argued that if notice of cancellation was required to be given only after the premium became due, then the insured would in effect obtain at least ten days of free coverage, which would be a strange result. The court answered: "Whether that result is strange need not be debated, because it is enough to say that if ten days of free insurance does result, as it well could, it is because the policy is so drafted—and drafted by the company." 268 Ark. at 863, 597 S.W.2d at 108–09.

The Georgia court in *Pennsylvania National Mutual Casualty Insurance Co. v. Person,* 164 Ga.App. 488, 297 S.E.2d 80 (1982), dealt with a billing notice with a cancellation clause[9] rather similar to the no-

---

8. The billing statement in *Hart* contained the following language: " 'If the premium due is an installment under Deferred Premium Payment Plan, and payment is not received by due date, notice is hereby given that such policy is cancelled on due date.' " 268 Ark. at 858, 597 S.W.2d at 106.

9. The cancellation clause on the billing notice read: "PAY THE AMOUNT DUE BEFORE THE INSTALLMENT DUE DATE SHOWN OR THIS STATEMENT BECOMES A NOTICE OF CANCELLATION EFFECTIVE 11 07 80 12:01 A.M. STANDARD TIME. PROVIDING ALL PRIOR

tice in this case mailed November 29, 1988. The Georgia court concluded that it was not a proper cancellation notice:

> "In the instant case the notice of cancellation was not given to the insured upon her failure to pay the premium *when due.* Rather, notice of cancellation was given *before* the premium was due. There was no reason to cancel the policy until *after* the premium became due and payable. Thus, the insured is entitled under statute to notice of cancellation for failure to pay her premium *when* due and at least a ten day grace period prior to the *effective date* of the cancellation." 164 Ga.App. at 489, 297 S.E.2d at 82. (Citation omitted).

*See also Mitchell v. Burnett,* 1 Ill.App.3d 24, 272 N.E.2d 393 (1971); *Breland v. All Am. Assur. Co.,* 366 So.2d 1051 (La.App.1978); *Dairyland Ins. Co. v. Neuman,* 338 N.W.2d 37 (Minn.1983).

Thus, we find that the initial notice of November 29, 1988, was insufficient to constitute a cancellation notice under the foregoing law. Much like the policy language in *Priest, supra,* Motorist Mutual's policy language on cancellation is "if cancellation is for nonpayment of premium[.]" Obviously, the cancellation cannot occur until there has been a nonpayment of the premium. Moreover, the policy promises at least a ten-day notice prior to the date of cancellation.[10]

■ Much the same deficiency exists in the second notice mailed December 29, 1988. That notice provided no direct and unequivocal statement that the policy was cancelled because of the failure to pay the premium when due on December 18, 1988. Rather, the notice permitted the insured an opportunity to keep the policy current by paying. Even if the language was adequate, the notice would fail because it was not mailed at least ten days before the cancellation date of January 3, 1989. This time restriction is a requirement in the Motorist Mutual policy, as we have already discussed. The North Carolina Supreme Court in construing a fifteen-day provision for a cancellation notice in

*Pearson v. Nationwide Mutual Insurance Co.,* 325 N.C. 246, 255, 382 S.E.2d 745, 749 (1989), stated "that such date must be at least fifteen days from the date of mailing or delivery of notice to the insured." *See also Hart v. MFA Insurance Co., supra.* See generally 14A J. Appleman & J. Appleman, *Insurance Law & Practice* § 8185 (1985).

When construing the two notices sent by Motorist Mutual in this case under *Staley v. Municipal Mutual Insurance Co. of West Virginia, supra,* we find that the notices were sufficiently ambiguous to not show a clear intent to terminate the policy within the requisite ten-day period required by the policy language. Where there has been an invalid cancellation, the automobile liability insurance policy remains in effect until the end of its term or until a valid cancellation notice is perfected, whichever event first occurs. *See Pearson v. Nationwide Mutual Insurance Co., supra.* For the foregoing reasons, we affirm the judgment of the Circuit Court of Wayne County.

Affirmed.

---

OUTSTANDING BILLINGS HAVE BEEN PAID BY THEIR DUE DATES. NO FURTHER NOTICE WILL BE GIVEN." 164 Ga.App. at 488, 297 S.E.2d at 81.

**10.** For the applicable policy language, see note 5, *supra.*