2008 OK 27

**EQUITY INSURANCE COMPANY, Appellee,**

v.

**CITY OF JENKS, Oklahoma, Defendant, and Cleo Smith, Appellant.**

No. 104456.

Supreme Court of Oklahoma.

April 1, 2008.

John L. Harlan, John L. Harlan & Associates, Sapulpa, OK, for Appellant, Cleo Smith.

Mark A. Warman, Wilkerson, Wassall & Warman, Tulsa, OK, for Appellee, Equity Insurance Company.

HARGRAVE, J.

¶ 1 The sole question is whether Equity Insurance Company (Equity) gave proper notice of cancellation of Cleo Smith's automobile liability insurance policy. We find that, under the terms of the policy, Equity's notice of its intent to cancel the policy at a future date if an installment premium was not paid was ineffective notice of cancellation for nonpayment of premium under the terms of the

policy. The policy requires the insurance company to give the insured at least a ten-day notice if cancellation is for nonpayment of premium.

¶2 On April 3, 2006, Equity Insurance issued a six-month policy of automobile liability insurance to Cleo Smith pursuant to Oklahoma's compulsory liability insurance law, 47 O.S. § 11–601 et seq. The policy term was from April 3, 2006 at 5:22 p.m. to October 3, 2006 at 12:01 a.m. The declarations page of the policy reflects a total premium of $649.00 and that Smith paid $138.67 at that time. The next day, April 4, 2006, Equity mailed to Cleo Smith a "Monthly Installment Billing" that also contained a "Cancellation Notice If You Do Not Pay Your Bill."

¶3 The April 4, 2006 invoice sent to Smith states that it is his car insurance bill and directs him to remove the bottom portion of the bill and mail it with the amount due in the envelope provided. The amount due is $113.00. The due date is shown as April 28, 2006. Included in the invoice is a "Cancellation Notice If You Do Not Pay Your Bill" that states that if payment is not postmarked prior to the cancellation date, May 3, 2006 at 12:01 a.m., the policy will automatically cancel on May 3, 2006 at 12:01 a.m. The cancellation notice stated that if payment was received on or after the cancellation date, a new policy might be issued but that no coverage would exist for losses occurring between the cancellation date and the effective date of any newly-issued policies.

¶4 Cleo Smith admits that the invoice was received at his residence. He did not pay the installment of premium on the due date, April 28, 2006, or by the cancellation date, May 3, 2006 at 12:01 a.m. On May 3, 2006 at approximately 5:07 p.m., Cleo Smith had a single-vehicle accident which damaged a utility pole belonging to the City of Jenks. The City of Jenks demanded that Mr. Smith pay the property damage in the amount of $10,060.00. Cleo Smith demanded that Equity Insurance pay the loss. Equity denied coverage on the ground that the insurance policy had cancelled on May 3, 2006 at 12:01 a.m.

¶5 Cleo Smith's attorney subsequently wrote to Equity demanding that they pay the City of Jenks, calling the policy cancellation unlawful. Equity Insurance filed a petition for declaratory relief in the district court of Tulsa County, naming the City of Jenks and Cleo Smith defendants. Equity requested that the court enter judgment in its favor declaring the rights of the parties to the insurance policy, and for costs and attorney fees. The trial court granted summary judgment in favor of Equity Insurance. We granted appellant's motion to retain the case. This is an accelerated appeal pursuant to Rule 1.36, Supreme Court Rules. Appellee's motion to strike or correct the record is denied. The entry to which appellee objects contained copies of the second pages of orders that appellee had submitted to the trial court for consideration.

¶6 The insured argues that under the terms of the policy, notice of cancellation for nonpayment of premium cannot be given until he has failed to pay the premium when due. In any event, he argues, he had paid the first installment premium which should have covered him for thirty days thereafter. The policy issued on April 3, 2006 at 5:22 p.m. and the accident occurred May 3, 2006 at approximately 5:07 p.m. Smith maintains that his reasonable expectation was that he was entitled to at least thirty days' coverage after payment of the initial premium and that the accident occurred within that period. Equity Insurance mailed him a refund in the amount of $11.34 on the initial premium paid. Smith argues that the policy term was for six months and anticipatory notice of cancellation does not come within terms of the policy because the sole basis for cancellation was nonpayment of premium, and nonpayment had not yet occurred. He further argues that allowing an insurance company to combine monthly premium statements with anticipatory cancellation notices in policies issued pursuant to Oklahoma's Compulsory Liability Insurance Law, 47 O.S. § 11–601 et seq., is against public policy.

¶7 Equity Insurance argues that notice of cancellation was properly given in accordance with the terms of the policy and applicable insurance regulations so that the policy was cancelled before the accident occurred. Equity maintains that it followed the terms of

the contract because it mailed the cancellation notice to the insured at his address more than ten days prior to the cancellation date; thus, the notice of cancellation contained in the invoice is in conformity with the policy and with Oklahoma Insurance Regulations.[1] Equity takes the position that the policy automatically cancelled on May 3, 2006 at 12:01 a.m. because Smith was issued the dual monthly billing and cancellation notice and he refused or neglected to pay the premium when due.

¶ 8 The termination provisions of Equity Insurance Company's policy issued to Cleo Smith appear in Part F of the policy:

**Termination**

**A. Cancellation.** This policy may be cancelled *during the policy period* as follows:

1. The named insured shown in the Declarations may cancel by:

  a. returning this policy to us; or

  b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

  a. at least 10 days notice:

    (1) if cancellation is for nonpayment of premium; or

    (2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

  b. at least 20 days notice in all other cases.

\* \* \* \*

(emphasis added).

¶ 9 Equity mailed the combined monthly installment billing notice and notice of cancellation to the insured at the address listed on the declarations page of the policy on April 4, 2006. The invoice stated that the amount due must be paid in full, and stated in large letters:

### CANCELLATION NOTICE IF YOU DO NOT PAY YOUR BILL

If your payment is not postmarked prior to the cancellation date, your policy will automatically cancel on 5–03–06, at 12:01 AM. If payment is received on or after the cancellation date, a new policy may be issued. You will be assessed a fee up to $25.00 for the issuance of any new policy. No coverage will exist for losses occurring between the cancellation date and the effective date of any newly issued policy. If policy cancels for non pay, you may still owe earned premium.

**For your own protection, we urge you to keep your insurance in force.**

The detachable section to be returned with the premium payment provides that the amount due is $113.00 and that the "Date due is 4–28–06. Cancel Date: 5–03–06."

¶ 10 Title 36 O.S. § 3621 provides that every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application attached thereto and made a part of the policy. The attachments to Equity's motion for summary judgment representing the policy terms and conditions are: 1) photocopy of one Declarations page for policy N35–90–3460–01, and 2) photocopy of Automobile Policy Oklahoma consisting of 53 printed pages. The application form is not attached nor is there any agreement pertaining to payment of premium in installments.

■ ¶ 11 The facts are not in dispute. We are called upon to interpret the rights of the

---

1. Equity relies upon the policy terms and also Reg. 365:15–1–14, Oklahoma Department of Insurance Regulations, photocopied at Plaintiff's Exhibit I:

  Chapter 15, Property and Casualty

  Subchapter 1, General Provisions

  *365:15–1–14: Notice of cancellation or nonrenewal*

  Unless otherwise provided, insurers shall give at least ten (10) days notice prior to the date of cancellation and twenty (20) days notice prior to the date of non-renewal of the insurance policy. If notice is given by mail, said notice shall be deemed to have been given on the day said notice is mailed. Proof of mailing of the notice of cancellation or non-renewal to the named insured at the address shown in the policy, shall be sufficient proof of notice. (Added at 19 Ok Reg 1303, eff. 7–14–2002)

parties to the insurance contract. On appeal from a grant of summary judgment our review is de novo. *Allen v. Lynn Hickey Dodge*, 2001 OK 93 ¶ 5, 39 P.3d 781. The precise question has not previously been decided by this Court. The majority of appellate courts interpreting similar provisions in statutes or policies have determined that notice of cancellation for nonpayment of premium cannot be given before the premium is due. *See, for example, Conn v. Motorist Mut. Ins. Co.*, 190 W.Va. 553, 439 S.E.2d 418, 423 (1993); *Hart v. Mutual Ins. Co.*, 268 Ark. 857, 597 S.W.2d 105 (App.1980); *Blair by Snider v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605 (Mo.2003); *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Person*, 164 Ga.App. 488, 297 S.E.2d 80 (1982); *Mackey v. Bristol West Ins. Svs. of California*, 105 Cal.App.4th 1247, 130 Cal.Rptr.2d 536 (2003); and *Pearson v. Nationwide Mut. Ins. Co.*, 325 N.C. 246, 382 S.E.2d 745 (1989).²

¶ 12 The rationale is that the notice must reflect that the policy *is* cancelled, not that *it may be* cancelled. That is, the notice of cancellation, to be effective, must be definite and not conditional. *See, Fisher v. Assoc. Underwriters*, 294 Ill.App. 315, 13 N.E.2d 809, 811 (1938) (letter stating that the insurer will cancel a policy unless premiums are paid by a certain date is not in itself a "cancellation," but rather a notice of an intention to cancel a policy). *See also, Blair by Snider v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605, 607 and *Hart v. Mutual Ins. Co.*, 268 Ark. 857, 597 S.W.2d 105 (App.1980). The Arkansas Court of Appeals cited an early Kansas case which reasoned that an actual intention to forfeit because premium has not been paid cannot exist until the cause for forfeiture arises. Cause for forfeiture cannot arise during the time within which payment may be made, so that time must expire and the premium be unpaid. *Priest v. Bankers' Life Association*, 99 Kan. 295, 161 P. 631, 633–34 (1916).³

¶ 13 It has also been stated that the purpose of providing strict time limits for advance notice as a prerequisite to cancellation of an automobile insurance policy is to protect the insured against unintended termination of coverage caused by the inadvertent delay of a premium payment and to make the insured aware that the policy is being terminated so that the insured has time to obtain other insurance prior to termination of the existing policy. *See, Campbell v. Home Ins. Co.*, 628 P.2d 96, 99 (Colo.1981); *Automobile Club Ins. Co. v. Donovan*, 550 A.2d 622, 623 (R.I.1988). *See also, Conn v. Motorist Mut. Ins. Co.*, 190 W.Va. 553, 439 S.E.2d 418, 422–423 (1993) (obviously cancellation cannot occur until there has been a nonpayment, and the policy promises at least a ten-day notice prior to the date of cancellation); and *Pennsylvania Nat. Mut. Cas. Co. v. Person*, 164 Ga.App. 488, 297 S.E.2d 80, 82 (1982) (there was no reason to cancel the policy until after the premium became due and payable and insured was entitled under statute to notice of cancellation for failure to pay premium when due). The result is to give the defaulting policyholder at least a 10–day period to cure the default or secure other insurance.

¶ 14 Insurance policies are contracts and they should be construed as every other contract—according to its terms where it is not ambiguous. *Carraco Oil Co. v. Mid–Continent Cas. Co.*, 484 P.2d 519 (Okla.1971). A contract term is ambiguous if it can be interpreted as having two different meanings. *K & K Food Services, Inc. v. S & H, Inc.*, 2000 OK 31, 3 P.3d 705. Here, the

---

**2.** We have found few cases which determine that notice of cancellation need not post-date the insured's failure to pay the premium. *See, Munoz v. New Jersey Automobile Full Ins. Underwriting Assn.*, 145 N.J. 377, 678 A.2d 1051 (1996). *See also, Farmers Ins. Exchange v. Lewis*, 316 F.Supp. 1260 (E.D.Okla.1970). The rationale is that the insured's act of not paying the premium caused the policy to cancel, or that the contract provisions were clear and the notice of cancellation clearly reflected that the policy would cancel for nonpayment.

**3.** The Arkansas Court of Appeals observed that to adopt the interpretation urged by the insurer-that notice may be sent at any time during the policy period-would literally mean that the company could issue a policy under a deferred payment plan and then immediately send out a notice that if *any* subsequent installment of premium was not paid on the due date the insurance would be cancelled on the date the premium was due. *Hart v. MFA Ins. Co.*, 268 Ark. 857, 597 S.W.2d 105, 107 (App.1980).

insured and the insurer do not argue that the contract is ambiguous and we do not find it to be so.

¶ 15 An insurance policy may be cancelled by mutual assent of the parties or according to the policy terms. *Farris v. Commercial Union Fire Ins. Co.*, 176 Okla. 331, 55 P.2d 432, 433 (1936). Here, there is no mutual assent so we must look to the language of the policy. Under the termination provisions of the policy, set out above, termination may occur by actions of the insured or by the insurer. The policy provides that it may be cancelled during the policy period by Equity mailing to the insured at least ten days' notice if cancellation is for nonpayment of premium.

¶ 16 We have strictly construed cancellation provisions of insurance contracts. *See, Bankers Reserve Life Co. v. Rice*, 99 Okla. 184, 226 P. 324 (1924). In *Rice*, we said that the condition urged by the insurance company for cancellation of the insurance policy must be found in the contract of insurance rather than in a separate promissory note given to secure payment of premiums on the policy. In the absence of a condition in the policy providing that nonpayment of the subsequent notes would operate to forfeit the policy, the failure of the insured to pay the note did not alone render the contract of insurance null and void. The policy and the note, read together, merely created an option in favor of the insurance company to forfeit the policy. The insurance company could then exercise the option by giving the insured clear and unequivocal notice of its election to cancel.

¶ 17 The policy in the case at bar states that the company "may cancel" for nonpayment of premium. The use of the word "may" indicates that the insurer has the option to cancel the policy for nonpayment of premium. This language suggests to the insured that if he fails to pay an installment, the company may elect to cancel the policy, but it must give him ten days' notice if it does so. It would lead the insured to believe that a failure to pay the premium on or before the due date does not automatically result in cancellation, but merely gives rise to the possibility of cancellation. *See, Hart v.*

*MFA Ins.*, 268 Ark. 857, 597 S.W.2d 105, 109 (App.1980)

¶ 18 We find that Equity Insurance Company's anticipatory notice of cancellation, conditioned upon Smith's failure to make the next installment payment when due, was ineffective to cancel the policy. If the insurer elects to cancel the policy for nonpayment of premium, then according to the policy terms it must give the insured a ten-day notice. Notice of *cancellation* cannot be given prior to occurrence of the event that triggered the insurer's option to cancel: nonpayment of premium. In light of our holding we need not address the other arguments raised by the insured.

## CONCLUSION

¶ 19 Under the terms of the automobile liability insurance policy between the parties the insurer must give the insured a ten-day notice of cancellation for nonpayment of premium. We find that the notice sent by Equity of its intention to cancel the policy in the future in the event that the installment premium was not paid on the due date given is not a clear and unequivocal notice of cancellation of the policy. It is a notice of a future intent to cancel the policy if the premium is not paid by the given date. Under the terms of the Equity policy, we find that effective notice of cancellation for nonpayment of premium cannot be given before the premium is due and unpaid.

**REVERSED AND REMANDED.**

¶ 20 ALL JUSTICES CONCUR.