2008 OK 79

**EQUITY INSURANCE COMPANY,**
**Plaintiff/Appellee**

v.

**Jesse ST. CLAIR; Deborah St. Clair; David Steelman; and the Estate of Floyd Steelman, Deceased, Defendants/Co–Appellants.**

No. 105,261.

Supreme Court of Oklahoma.

Sept. 16, 2008.

Robert W. Hayden and Anthony W. Speck, Oklahoma City, for Plaintiff/Appellee.

Karen Keith, Richard A. Pizzo, Tulsa, OK, for Defendants/Co–Appellants.[1]

OPALA, J.

¶1 Two questions are posed in this controversy for our review: (1) Is Equity Insurance Company's policy provision that deals with cancellation for nonpayment of a premium ambiguous? If so, did defendant tender proof that would raise a question of fact as to when notice of the policy's cancellation must be submitted to the insured? (2) Do the terms of the Oklahoma Consumer Credit Protection Code, 14A O.S.2001 § 4–304,[2] apply to insurance agreements in which installment payments for coverage are acceptable? We answer the first question in the negative but reverse the trial court's judgment on other grounds. Because our answer to the first question is dispositive of the controver-

---

1. Identified herein are only those counsel for the parties who have entered an appearance in this cause (as required by Okla.Sup.Ct.R. 1.5(a), 12 O.S.2001, Ch. 15, App.1) and whose names appear on the materials dealing with this appeal.

2. The terms of the Oklahoma Consumer Credit Protection Code, 14A O.S.2001 § 4–304, provide: A creditor shall not request cancellation of a policy of property or liability insurance except after the debtor's default or in accordance with a written authorization by the debtor, and in either case the cancellation does not take effect until written notice is delivered to the debtor or mailed to him at his address as stated by him. The notice shall state that the policy may be cancelled in accordance with the terms and conditions of the policy.

sy, it is not necessary to reach for review the second question tendered.

## I.

## THE ANATOMY OF LITIGATION

¶ 2 Equity Insurance Company (Equity or insurer) issued a six-month policy insuring the vehicle to be driven by Jesse St. Clair (defendant who, with his mother Deborah St. Clair, will be referred to here as St. Clair or insured). The policy's term was to begin on 20 June 2005 and end on 20 December of that year.[3] Equity permits policy premiums to be paid monthly. Its monthly invoice reveals *inter alia* (1) the insured may pay the entire premium due (which is shown on the statement) or may pay it in monthly installments (the installment's amount to be paid is provided in the statement); (2) for

those who choose the latter payment method, an installment fee of $9.00 is charged and added and (3) the date payment is due.[4] A significant portion of the statement is devoted to the provisions for cancellation of the policy for nonpayment of the premium.[5] The invoice provides that the policy will be canceled automatically on a specified date and time if the premium payment is not postmarked prior to the cancellation date provided in the invoice.[6]

¶ 3 The pertinent facts are not disputed by the parties. St. Clair timely paid the monthly premium installments for the months of July and August. Although a September invoice was sent to him by Equity, St. Clair neither made a premium payment for that month nor any time thereafter. Equity cancelled the policy on 27 September 2005 at 12:01 a.m. in accordance with the terms of

3. The policy declarations page reveals the policy period to be from 20 June 2005 at 4:36 p.m. to 20 December 2005 at 12:01 a.m.

4. The body of Equity's monthly installment billing statement, timely mailed to St. Clair in August 2005, provides:

\* \* \*

Dear Policyholder:

This is your car insurance bill. Please remove the bottom of this bill and mail it with the amount due in the envelope provided. Allow 5 days for mail time. WE CANNOT ACCEPT LESS THAN THE AMOUNT DUE. DO NOT SEND CASH! \*An installment fee of $9.00 is fully earned and will not apply to policy premiums. The policy premium is the amount due less the fee.

PLEASE BE SURE TO KEEP THIS VALUABLE PROTECTION BY MAILING YOUR PAYMENT. WE APPRECIATE YOUR BUSINESS.

CANCELLATION NOTICE IF YOU DO NOT PAY YOUR BILL

If your payment is not postmarked prior to the cancellation date, your policy will automatically cancel on 9–27–05, at 12:01 AM. If payment is received on or after the cancellation date, a new policy may be issued. You will be assessed a fee up to $25.00 for the issuance of any new policy. No coverage will exist for losses occurring between the cancellation date and the effective date of any newly issued policies. If policy cancels for non pay, you may still owe earned premium. FOR YOUR OWN PROTECTION, WE URGE TO KEEP YOUR INSURANCE IN FORCE.

TO PAY BY CREDIT CARD: Indicate the amount of your payment plus the $5 credit card fee, Credit Card Number, Expiration Date, and sign the credit authorization on the reverse.

\* \* \*

AMOUNT DUE: $148.00
IN FULL DUE: $426.00
DATE DUE: 09-20-95 CANCEL DATE: 09-27-05

\* \* \*

Equity's billing statements for the months of July and August were in the same form. Adjustments were made providing the calculated premium and installment due for the month, the date it is due, and the date the policy would be cancelled in the event the premium was not paid on or before the date reflected on the invoice.

5. The pertinent cancellation provision in Equity's policy provides:

TERMINATION

A. Cancellation. This policy may be cancelled during the policy period as follows:

\* \* \*

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

a. at least 10 days notice:

(1) if cancellation is for nonpayment of premium; or

(2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

b. at least 20 days notice in all other cases.

\* \* \*

6. For the invoice and policy terms dealing with cancellation, see *supra* notes 4 and 5.

the monthly billing statement.[7] No additional notice of the policy's cancellation was ever provided by Equity to St. Clair.

¶ 4 On 17 December 2005 Jesse St. Clair was involved in a vehicular accident, injuring himself and two passengers (David Steelman and Floyd Steelman, the latter of whom was fatally injured). St. Clair made a claim for benefits under the policy. Insured urges the policy remained in effect because Equity failed to give notice of its intent to effect cancellation in accordance with the policy's terms. Equity sought declaratory relief urging that the policy was effectively cancelled and it hence had no other obligation under the contract.[8] The trial judge granted summary judgment to Equity. St. Clair appeals from the trial court's disposition for the insurer.

## II.

### *EQUITY INSURANCE COMPANY v. CITY OF JENKS* IS DISPOSITIVE OF TODAY'S CAUSE

¶ 5 This court's pronouncement in *Equity Insurance Company v. City of Jenks*[9] is dispositive of St. Clair's quest for reversal of the summary ruling. That opinion, promulgated earlier this term, dealt with the same insurer, the identical policy cancellation provision, and a similar set of facts.[10] It teaches Equity's monthly billing statement, which included notice that the policy may be cancelled in the event of insured's failure timely to pay the premium due, was insufficient to give notice of cancellation under the terms of that policy.[11] The court explained this was so because (1) notice of a policy's cancellation cannot be given before the occurrence of the event that triggers the insurer's option to cancel[12] and (2) notice of the policy's cancellation must be clear and unequivocal.[13] Under the terms of Equity's policy its statement in the invoice concerning the policy's cancellation for nonpayment of the premium before the payment came due was hence ineffective. Likewise, Equity's anticipatory statement in the invoice that the policy may be cancelled upon an insured's failure to pay the premium due, constituted neither a clear nor an unequivocal *in praesenti*[14] cancellation of the policy.[15]

¶ 6 St. Clair urges the policy's cancellation provision for nonpayment of premiums is ambiguous at best. Although this argument was not urged by the parties in *City of Jenks*, dictum contained in that case reveals the contract was not likely viewed as ambigu-

---

7. See *supra* note 4 for the invoice provisions.

8. Equity urges the terms of the policy are not ambiguous. It also relies upon Rule 365:15–1–14, Oklahoma Department of Insurance Rules, which provides:

   Unless otherwise provided, insurers shall give at least ten (10) days notice prior to the date of cancellation and twenty (20) days notice prior to the date of non-renewal of the insurance policy. If notice is given by mail, said notice shall be deemed to have been given on the day said notice is mailed. Proof of mailing of the notice of cancellation or nonrenewal to the named insured at the address shown in the policy, shall be sufficient proof of notice.

9. *Equity Insurance Company v. City of Jenks*, 2008 OK 27, 184 P.3d 541.

   Summary relief issues stand before the court for *de novo* review. For a comprehensive discussion of this review genre, see *Liddell v. Heavner*, 2008 OK 6, 180 P.3d 1191.

10. In *Equity v. City of Jenks*, *supra* note 9, at ¶ 1 at 541, the issue addressed was whether the insurer gave proper notice to the insured of the policy's cancellation for the latter's nonpayment of premium. There the insured failed to pay the first monthly premium installment either by the due date or the cancellation date. The invoice provided the policy cancellation date was 3 May 2006 at 12:01 a.m. Insured was involved in a single-vehicle accident on 3 May 2006 at approximately 5:00 p.m.

11. *City of Jenks*, *supra* note 9, at ¶ 19 at 545.

12. *City of Jenks*, *supra* note 9, at ¶ 19 at 545.

13. *City of Jenks*, *supra* note 9, at ¶ 19 at 545. Equity's policy provides that the insurer may cancel the policy for nonpayment of premium. Use of the term "may" indicates the insurer has the *option* to cancel in the event of premium nonpayment. It would suggest to the insured that if he neglects to pay an installment, insurer may choose to cancel the policy, but must still give the latter ten-day notice of intended cancellation. *Jenks, supra*, at ¶ 17 at 545.

14. The term *"in praesenti"* means at present or presently effective. Black's Law Dictionary 795 (7th ed.1999).

15. City of *Jenks, supra* note 9, at ¶ 19 at 545.

ous.[16] Equity's monthly premium invoice *cum* notice of cancellation in the event of nonpayment of a premium was not sufficient as *in praesenti* notice of the policy's cancellation. In accordance with the rationale in *City of Jenks*, the trial court's summary judgment for Equity must be reversed as contrary to law. Our conclusion makes it unnecessary also to reach for review the second question—whether the terms of the Oklahoma Consumer Credit Protection Code, 14A O.S. 2001 § 4–304, apply to this controversy.

## III.

## SUMMARY

¶ 7 The court's earlier pronouncement in *Equity Insurance Company v. City of Jenks* is dispositive of the quest for reversal. To effectively cancel its automobile insurance policy for nonpayment of a premium in accordance with the policy terms, Equity must provide an insured at least a ten-day notice of its clear, unequivocal *in praesenti* act of canceling the policy *following* the insured's failure timely to pay the premium that was due. The trial court's disposition of the action by summary judgment for the insurer is reversed and the cause remanded for further proceedings to be consistent with today's pronouncement.

¶ 8 ALL JUSTICES CONCUR

---

16. "Here, the insured and the insurer do not argue that the contract is ambiguous and we do not find it to be so." *Equity Insurance Company v. City of Jenks, supra* note 9, at ¶ 14 at 544–45.

Although the issue is phrased differently here, the bottom line is the same as that addressed by *City of Jenks, supra* note 10, at ¶ 1 at 541.